B. A. WILLIAMS, II, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16530.

United States Court of Appeals Ninth Circuit.

April 8, 1960.

———◆———

Arthur A. Brooks, Jr., Hollywood, Cal., for appellant.

Louis B. Blissard, U. S. Atty., Daral G. Conklin, Asst. U. S. Atty., Honolulu, Hawaii, for appellee.

Before POPE, MAGRUDER and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Williams appeals from judgment of conviction of the crime of mail fraud under 18 U.S.C. § 1341.[1] He contends (1) that there is no evidence of intent to defraud; (2) that there is no evidence that the use of the mails involved was for the purpose of executing the scheme to defraud; (3) that the information filed against him was defective.

The information charged Williams with devising a check-kiting scheme involving three banks—one in Hawaii, one in Seattle, and one in Denver; and, in connection with this scheme, with causing checks drawn on these banks to be placed in the mails. The information was drawn in six counts, each reciting

---

[1] "Frauds and swindles

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

the same general scheme but relating to separate uses of the mails. It charged:

(1) On or about April 24, 1958, he deposited in Bank of Hawaii $44,000 worth of checks drawn on the Seattle-First National Bank (where his then balance was but $2,196.85);

(2) On or about April 30, 1958, he deposited in Seattle-First National Bank $45,000 worth of checks drawn on Bank of Hawaii (where his then balance was but $10.65);

(3) On or about May 2, 1958, he deposited in the Hawaii Bank $45,500 of Seattle checks (where his then balance was $7,067.19);

(4) On or about May 6, 1958, he deposited in the Seattle Bank $46,200 of Hawaii checks (where his then balance was $510.65);

(5) On or about May 8, 1958, he deposited in the Hawaii Bank $50,000 worth of Seattle checks (where his then balance was $4,997.78);

(6) On or about May 14, 1958, he deposited in the Hawaii Bank $51,000 worth of checks drawn on the United States National Bank, Denver (where his then balance was $7.82).

In 1957 and 1958, Williams was engaged in oil drilling operations. Liens had been filed against certain of his leasehold interests, and he was faced with the necessity of raising funds to release the liens. To this end, he attempted to sell interests in his leases. He testified that on April 24, 1958, he was advised by his Seattle agent that oral commitments for sale of interests had been secured; that he had instructed his agent to consummate the sales and deposit the proceeds to his Seattle account; that he had then drawn a check on the Seattle bank, deposited it in his Hawaii bank and drawn on that bank to make payment to his creditors. He had then learned that the Seattle funds had not come through. The transactions specified in Counts 2 to 6 of the information followed, resulting in an overdraft of approximately $50,000.00 at the Bank of

Hawaii on or about May 15, 1958. Eventually all checks were made good and no bank has suffered a loss. Williams contends that these facts demonstrate lack of fraudulent intent.

Section 1341 requires a specific intent to defraud. United States v. Broxmeyer, 2 Cir., 1951, 192 F.2d 230; Federman v. United States, 7 Cir., 1929, 36 F.2d 441, certiorari denied 281 U.S. 729, 50 S.Ct. 246, 74 L.Ed. 1146. Even where the defendant has knowledge of lack of funds at the time the check is drawn, fraudulent intent is negatived by proof that he had a reasonable expectation that deposits would cover the check at the time it was presented for payment. See People v. Griffith, 1953, 120 Cal.App.2d 873, 262 P.2d 355; Pruitt v. State, 1918, 83 Tex.Cr. 148, 202 S.W. 81; State v. Foxton, 1914, 166 Iowa 181, 147 N.W. 347, 354, 52 L.R.A.,N.S., 919; State v. Lord, 1899, 77 Minn. 267, 79 N.W. 968. Williams contends that such is the case here.

The expectation of the defendant must, however, be more than mere hope. The circumstances must be such as to justify a reasonably certain belief that funds will be available. See United States v. Broxmeyer, supra; People v. Becker, 1934, 137 Cal.App. 349, 30 P.2d 562.

The question before us is whether the evidence was such that a jury could find beyond reasonable doubt that Williams had no such expectation. Schino v. United States, 9 Cir., 1954, 209 F.2d 67, 72, certiorari denied 347 U.S. 937, 74 S.Ct. 627, 98 L.Ed. 1087. The expectation upon which he relies is that the Seattle sales would be immediately consummated and the proceeds deposited to his Seattle account, all before the checks mentioned in Count 1 would be presented for payment.

Counts 2 to 6, however, do not relate to that expectation. As to these counts, the manager of the Hawaii bank testified that he had asked Williams whether he did not know that he was kiting and that Williams had answered: "Yes, but it didn't start out that way." Williams' own testimony makes it clear that he

knew precisely what he was doing; that he was engaged in desperate efforts to raise money and was seeking temporary credit to give him time to continue in these efforts. The fact that he had hoped and intended that his checks would eventually be made good does not alter the fact that he had acted with knowledge that the checks, when drawn, were not covered by deposits and would not be covered until his efforts to raise money succeeded. In United States v. Broxmeyer, supra, 192 F.2d at page 232, it was said:

"He [the defendant] insists that intent to defraud was not proved and that, since such intent is an essential element * * * [of § 1341] * * *, his convictions cannot stand. * * * The government put in persuasive evidence showing his desperate need at this time for cash, and his frantic efforts to obtain it before the deposit of these checks. The fact that * * * [the defendant] * * * was the unfortunate victim of his own financial manipulations, or that he would have paid these checks if his check-cashing chain had not broken, does not alter his intent to defraud, if he had no reason to believe that his legitimate sources of income would suffice to make the checks good."

See: Deschenes v. United States, 10 Cir., 1955, 224 F.2d 688; and Federman v. United States, supra.

As to Count 1, Williams knew that the Seattle sales had not been consummated and that he had no more than oral commitments to purchase. The jury was wholly justified in concluding from all the circumstances that Williams did not have a firm belief that payment of his checks would follow as a matter of course.

■ We conclude that the record establishes intent to defraud the banks in which the fictitious checks had been deposited.

■ Williams next contends that use of the mails was not involved in the scheme; that, if he was guilty of fraudulent conduct, such defrauding in each case was fully completed when the deposit had been made and that use of the mails was not necessary to his purpose.

There is no merit to this contention. As said in Deschenes v. United States, supra, 224 F.2d at page 690:

"Clearly, the appellant here knew and intended that the mails would be used in transferring the checks from one bank to the other in the regular course of business. In fact, the time consumed by such transfer was the very essence of the scheme which made it possible, and this practice constitutes a violation of the mail fraud statute."

See, also, United States v. Lowe, 7 Cir., 1940, 115 F.2d 596, certiorari denied 311 U.S. 717, 61 S.Ct. 441, 85 L.Ed. 466.

Finally, Williams contends that the information filed against him is defective in that it does not charge that he "knowingly" caused the checks to be deposited in the mail, pursuant to the language of § 1341.

■ If, as charged, he caused the checks to be deposited in a Post Office, he has sufficiently been charged with knowingly making use of the mails. In United States v. Weisman, 2 Cir., 1936, 83 F.2d 470, 474, 107 A.L.R. 293, it was contended that the failure to include the word "knowingly" in the charge to the jury was fatal. There the court said:

" * * * we can see no difference between causing a letter to be placed in an authorized depository for mail matters or in 'knowingly' causing it 'to be delivered by mail' * * *."

See also: Pereira v. United States, 1954, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435.

Affirmed.