[Crim. No. 3992.   First Dist., Div. Two.   Feb. 19, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. CLYDE LEROY DICK, Defendant and Appellant.

George T. Davis and George C. Martinez for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

SHOEMAKER, J.—Defendant Clyde Dick was charged by information with 13 counts of issuing checks without sufficient funds (Pen. Code, § 476a), and two prior convictions of felony. Defendant admitted the priors and the jury found him guilty on seven counts. Judgment was entered accordingly, and defendant appeals therefrom.

The record shows that on February 23, 1960, defendant opened a checking account at the Hester Branch of the Bank of America, with a deposit of $10. Between that date and April 13, 1960, defendant deposited an additional $909.32. Defendant's account was closed by the bank on June 7, 1960. During the period from June 8, 1960 to March 14, 1961, the bank returned 65 checks drawn on defendant's account. These checks amounted to $1,336.91.

The 13 checks with which defendant was charged were

issued between August 26, 1960 and December 26, 1960, all of which period was after the bank closed his account, and a portion after his preliminary hearing held on November 17, 1960.

Defendant admitted writing the checks. His defense was that he believed, up until the date of the preliminary hearing, that there were sufficient funds in his account to cover the checks. He testified that he had not received any notice that his account was closed because he left on a trip back East sometime in May of 1960, and did not return until the end of August. However, the bank testified to giving notice by mail before this time, although as of record they closed the account June 7, 1960. As to the checks issued after the date of the preliminary hearing, defendant testified that the merchants to whom he gave the checks promised to hold them for him.

Appellant does not question the sufficiency of the evidence to support the judgment; he relies for reversal upon the alleged prejudicial misconduct of the court and district attorney.

Appellant first contends that the trial court was guilty of prejudicial misconduct in making certain comments in the presence of the jury. The comments complained of were made by the court after appellant's objection to a remark of the district attorney during his closing argument. In his opening argument, the district attorney stated that appellant and his wife had both testified that they left for the East in the middle of May. Counsel for appellant made no objection to this statement. In his argument to the jury, however, appellant's counsel commented on the district attorney's statement and informed the jury that Mrs. Dick's testimony was actually to the effect that they had left for the East in the middle of June The district attorney's closing argument stuck to the May date; whereupon, the following exchange occurred: "MR. MARTINEZ: [Counsel for appellant] I would like to state that I believe that the wife's testimony was other than what the District Attorney says it was. I think it should be read back. I think she testified that they left in June. I don't know whether it is correct or not. THE COURT: Well, it's the Court's recollection, Mr. Martinez, that she testified that they left in May."

Thereafter, counsel for appellant checked with the court reporter and discovered that his recollection of the testimony was correct. This was called to the attention of the court, in chambers, and a motion for mistrial was made and denied.

When the jury returned to the courtroom, appellant's counsel pointed out to the jury that both the trial judge and the district attorney had been mistaken as to Mrs. Dick's testimony. The district attorney then stated that he had been "dead wrong" in his assertion that Mrs. Dick had testified that they left for the East in May. He apologized to the defense, to Mrs. Dick, and to the jury. The trial judge also stated that he had been wrong and that Mr. Martinez had been correct. He further stated, "Mr. Martinez, I am sorry I made that error. She indeed did say that they had left in June. And you were correct on that point. I want the jury to know that Mr. Martinez's motion at this time is certainly in order, and I want to get that corrected for you."

Appellant now contends that nothing said by the district attorney or by the trial court could possibly do away with the impression that the court so leaned toward the prosecution's theory of the evidence that it would take the district attorney's word on a hotly disputed and material point about which it had no independent recollection. Our recital of the facts completely refutes this contention.

The power of the court to comment on the evidence and the credibility of witnesses is well established. (*People* v. *Friend* (1958) 50 Cal.2d 570 [327 P.2d 97].) In the instant case, the trial judge did not state that he favored one side or the other, or that he believed one witness rather than another. The immediate apology made to appellant's counsel, in the presence of the jury, by both the trial judge and the district attorney, most certainly cured any slight damage that appellant feels may have been incurred by the incident. We do not doubt that the court's comment resulted in no prejudice whatever to appellant.

Appellant next asserts that the court was guilty of prejudicial misconduct in its examination of the prospective jurors. The incident complained of arose under the following circumstances: At the commencement of the *voir dire* examination of the prospective jurors, the trial judge asked the jurors to consider whether, if they were the defendant, they would be satisfied to be tried by 12 jurors in their present state of mind. Juror Tyson raised his hand, and the court noted this and stated that it would not go into the juror's reasons at that time. The district attorney subsequently asked Mr. Tyson a number of questions in order to determine why he felt he would not make a fair and impartial juror. The juror's answers satisfied the district attorney.

The appellant's counsel, in examining Tyson, propounded an involved question as to whether or not he would care to have 12 jurors in exactly his frame of mind try him on the merits of the case, and when the juror indicated uncertainty in answering, pressed him for a "yes" or "no," and on receiving a "no" answer, immediately challenged for cause. Whereupon, the court interposed and the following occurred: "THE COURT: Well, Mr. Tyson, now, what do you mean by 'No'? Don't you feel that you—if you were the defendant here, you would be satisfied to have—I am not leading you—do you or don't you feel that if you were the defendant sitting right there, that you would be satisfied to have twelve people in your present state of mind trying this case? If you say 'No,' that's fine. But do you really mean 'No'? MR. TYSON: Well, your Honor, the gentleman from the District Attorney's office questioned me before. I felt that I could be broadminded enough, you know, to be fair about it. But I feel now that—— MR. MARTINEZ: I am sorry to interrupt you. But I really think that his answer should be taken by the Court, and I feel compelled to object to any questions along this line. MR. DALTON: I see no objection. THE COURT: Objection overruled. Will you, please, finish, Mr. Tyson. MR. TYSON: I feel that it is—felt that when I stated that I knew something of the case, that it was from the newspaper. And actually, I haven't read anything about it in the newspaper at all. I have other knowledge of the case, and it involves certain people who are close to me, although there was no charge made by these people. And there was a certain amount of trouble and so forth. THE COURT: You think that you couldn't be fair and impartial in this case? MR. TYSON: In all fairness, I really, in the back of my mind—I feel that I couldn't. THE COURT: All right, sir. I appreciate your honesty." The juror was thereupon excused. However, appellant urges that the trial judge was guilty of prejudicial misconduct in asking Tyson any further questions after he had already stated that he would not like to be tried by 12 jurors of his same frame of mind. Appellant contends that the additional questions asked by the court brought out evidence of other crimes with which appellant was not charged; that the trial judge must have realized that such would be the result and hence erred in overruling appellant's objection and insisting that Juror Tyson specify the reason for his attitude toward the case and defendant.

Appellant's contention is untenable. Penal Code, section

1076, provides that a juror shall not be disqualified because he has formed an opinion as to guilt founded upon public rumor, statements in public journals, circulars, or other literature, or common notoriety, provided it appears to the court that he will act fairly and impartially. ▉▉ Where a juror on *voir dire* has made conflicting statements regarding his ability to act with impartiality, it becomes a question of fact for the trial judge to determine whether the juror can set aside his prejudice or bias. (*People* v. *Duncan* (1960) 53 Cal.2d 803, 815-816 [3 Cal.Rptr. 351, 350 P.2d 103]; *People* v. *Daugherty* (1953) 40 Cal.2d 876, 890 [256 P.2d 911].)

There was ample justification for the trial judge to assume that Juror Tyson was confused as to the measure of impartiality required of him. There was also no indication at this time that Tyson's knowledge of the case was the result of anything more than newspaper reports, public rumor, or common notoriety. Under these circumstances, the trial judge was certainly justified in the question, and was obviously seeking to resolve the conflicting views expressed to the end that he might avoid disqualifying a juror who had merely misunderstood a question but who would have been able to try the facts before him with fairness. Furthermore, we cannot fathom how the information elicited from Mr. Tyson could have had any prejudicial effect on the other jurors. Although appellant asserts that evidence of other crimes was brought out, it may be noted that Mr. Tyson stated only that certain people close to him had had some sort of trouble with the defendant, although they had made no charge against him. There was no prejudice.

▉▉▉ Appellant next asserts that the district attorney was guilty of prejudicial misconduct in commenting on facts not in evidence during the course of his argument to the jury. Appellant contends that the district attorney made repeated references to other crimes with which appellant had not been charged. The first remark of which appellant complains occurred during the district attorney's opening argument to the jury, as follows: "The bulk of the checks are written for ten dollars. You can see that. Lots of checks—and they are in small amounts. Most of these merchants take it on the chin because it is not worth the time and effort and the money to go through a prosecution like this. Can you imagine these merchants—the time involved—they have to be in Preliminaries. Now—— Mr. MARTINEZ: I would like to enter an objection to that last remark in regard to the purpose

of the evidence and an admonition to the jury—whatever purpose in regard to other checks that allegedly bounced. THE COURT: The objection will be overruled. MR. DALTON: Can you imagine—let's take Mr. Sporleder, for example. He has been with us since the 17th. He had—what was it—I have forgotten the amount now—it was a twenty-dollar check. He reported to the police. He had to take off for the first Preliminary. He has to take off for the second Preliminary. He has to come into Court. Can you imagine the amount of money it can cost when you can write it off your taxes? I will tell you frankly that I don't know who these people are with the exception of some of the people back East. That is the simple fact of it. Mr. Dick knows that. You can tell from the way he handled that. I don't know who they are. We have only been able to charge thirteen, because that is all that has come in except for the ones back East. And, of course, I can't bring witnesses from out of state. Checks that were passed back there are crimes in other states. I can't do anything about it. So he knows that I don't know the people. But this evidence is brought in to show his state of mind, not for any other purpose.'' Appellant also points to similar remarks made by the district attorney during his closing argument to the jury. The district attorney there commented on the fact that appellant had deposited a total of $919 in the bank but had drawn checks which exceeded this amount by $2,200. He noted that appellant had already bounced 27 checks totaling $900 by the time he left on his trip to the East; that appellant sold his car and received $1,700, but had deposited none of it, instead taking the entire amount with him on his trip, "And he knew that these little checks would never catch up with him because all these other crimes were committed in other states. And they have to get him in the other states because that is where it was passed. And that is where the crime was committed.'' Counsel for appellant then objected, but the trial court directed the district attorney to continue with his argument.

An examination of the record reveals that appellant had written numerous checks in addition to the 13 with which he was charged. The bank official in charge of appellant's account testified that by June 7, 1960, the bank had returned 20 of appellant's checks for which there were insufficient funds in his account. During the period from June 8, 1960 to March 14, 1961, the bank returned an additional 65 checks drawn on appellant's account; the total amount of these 85 unhonored

checks came to $1,593.89. Counsel for appellant registered no objection to this testimony.

On cross-examination, appellant himself testified that he thought he had written five or ten checks while he was back East. He stated that they were small checks and that he didn't remember exactly how many there were. Although he had a large amount of cash with him, he wrote checks because it was difficult to change $100 bills. Appellant also testified that he had written two or three checks for $20 apiece while he was at the Bannorman Hotel back East, and that he had since written his uncle to have him try and take care of these checks.

In view of the testimony of appellant and the banker, the district attorney's remarks cannot be deemed comments on matters not in evidence. Although appellant also contends that the district attorney's remarks were made for an improper purpose, this contention cannot be upheld.

The evidence that appellant had written numerous other checks without having deposited sufficient funds to cover them was clearly admissible to show that the 13 checks upon which the prosecution was based were made and delivered with intent to defraud. (*People* v. *Cuthbertson* (1959) 176 Cal.App.2d 393 [1 Cal.Rptr. 435].) Evidence of other checks may certainly be received for the purpose of showing intent or the use of a common scheme or design embracing both such acts and the acts with which a defendant is charged. (*People* v. *Choate* (1958) 157 Cal.App.2d 782 [321 P.2d 815].)

None of the remarks made by the district attorney appear to have gone beyond the limited purpose for which evidence of the other checks was admitted. He was certainly entitled to argue that a person intending to defraud might issue a large number of small checks, particularly while traveling about, in the hope that no individual merchant would feel that the amount involved made it worth his while to press charges. Particularly would this seem relevant in view of appellant's testimony that "If I was writing and trying to cheat somebody out of money, it wouldn't be for seven dollars." To refute this line of defense and to demonstrate the fraudulent intent, it was proper to argue that the checks were all part of a common scheme or design, and the prosecutor properly drew the jury's attention to the large number of checks written by appellant, both while traveling in other jurisdictions and while within California.

Appellant's final argument for reversal is that the district attorney was guilty of misconduct in stating to the jury that he had an independent belief in appellant's guilt. The questioned comments were made by the prosecutor during his closing argument to the jury and were evidently intended to rebut certain statements made by appellant's counsel during his argument. Appellant's counsel had stated that the district attorney apparently did not believe certain portions of appellant's testimony, such as his statement that he had taken 17 $100 bills with him on his trip back East. Counsel for appellant then stated, ''Well, Mr. Dalton apparently doesn't believe Mr. Dick in a lot of other regards too. He might be mistaken about those. Mistakes can be made.'' At a later point in his argument, appellant's counsel referred to the testimony of appellant's wife and stated, ''I don't think the District Attorney believes her. But the District Attorney didn't believe Mr. Dick when he said that he had some money back there, that he got from an automobile deal. The District Attorney didn't believe Mr. Dick when he said that he had several one-hundred dollar bills on him.''

The district attorney, upon commencing his closing address to the jury, stated: ''Mr. Martinez states that apparently Mr. Dalton doesn't believe a lot of the things that Mr. Dick says. I think I should clear that up, Ladies and Gentlemen. I hope that none of you have any doubts in your minds about my own beliefs. It is not evidence, of course. But I wouldn't be down here spending a week on a case if I believed Mr. Dick. Now, my job is to get these cases ready and evaluate them. If anything came up in the case that denies any of these counts, I would dismiss them on my own motion.'' Counsel for appellant then objected to these remarks, and the court ruled that the district attorney had gone far enough on this particular point.

Appellant now contends that the district attorney's statements constituted prejudicial misconduct. Appellant relies upon *People* v. *Kirkes* (1952) 39 Cal.2d 719 [249 P.2d 1]; *People* v. *Hidalgo* (1947) 78 Cal.App.2d 926 [179 P.2d 102]; and *People* v. *Chilcott* (1937) 18 Cal.App.2d 583 [64 P.2d 450]. In the *Kirkes* case, the court stated, at page 723: ''It is well established that statements by the prosecuting attorney, not based upon legitimate inferences from the evidence, to the effect that he has personal knowledge of the defendant's guilt and that he would not conduct the prosecution unless he believed the defendant to be guilty are misconduct.'' The

court went on to point out that remarks of this nature are objectionable because a district attorney, in stating that he would not prosecute any man he did not believe to be guilty, is thereby wrongfully placing his personal opinion of the guilt of the defendant in evidence in the case. The remarks made by the prosecutor in the case at bar fall within the area proscribed in the *Kirkes* case.

However, the function of the appellate court does not cease with the determination that the prosecutor was guilty of misconduct. Various other factors must be weighed by the court in arriving at a decision whether to reverse or affirm the judgment of the lower court. In the *Chilcott* case, for example, the court found that the prosecutor had been guilty of misconduct in stating that he had never prosecuted anyone of a crime unless he thought such person was guilty, and that he believed it was his duty to prosecute if the evidence warranted such action. The court went on to note, however, that appellant's counsel did not request the trial court to admonish the jury but rested content with an assignment of misconduct and the reservation of an exception. Since the prosecutor's remarks were general in nature, the court pointed out that they could have been obviated by an admonitory instruction. The court therefore held that reversal of the judgment was not warranted (pp. 588-589).

In the case at bar, counsel for appellant was equally content to register an objection without making any request that the jury be admonished. Since the remarks made by the district attorney were certainly of a general nature and included no reference to any specific evidence not introduced at the trial, an admonitory instruction would have cured any harmful results of the prosecutor's comments.

Although the court in the *Hidalgo* and *Kirkes* cases, *supra,* held the remarks there made so prejudicial in their effect that a reversal was required, both of these cases are distinguishable from the present one. In the *Hidalgo* case, the remarks made were of a far more serious nature. The prosecutor there stated that he was absolutely convinced of the defendant's guilt and informed the jury of the specific reasons for his personal belief. He stated that he knew every " '*in, out, quirk and little incidental about this defendant, and about every witness who appeared on this stand.*' " (P. 938.) He stated that he had spent hours in the defendant's neighborhood, that he had questioned the teachers at the prosecutrix' school, and that he had spent time examining records, marriage certificates,

and correspondence (p. 938). In view of these specific references to evidence not introduced at the trial, it would seem unlikely that any admonitory instruction could have obviated the effect on the jurors. Here, the remarks were of a general nature and contained no reference to the specific sources of information upon which belief in appellant's guilt was based.

In the *Kirkes* case, the prosecutor stated that he knew and had known prior to the trial that the defendant was guilty of the offense charged and that he would not otherwise have participated in the prosecution (p. 722). He further stated, however, that the jurors had a right to infer that a key witness for the prosecution had not come forward for eight years because she feared for her own safety if she testified against Kirkes (p. 722). The court held the cumulative effect of these two remarks to be so great that it could not have been overcome by an admonition to the jury (p. 726). The court further found that the evidence was entirely circumstantial and conflicting, and therefore held that the prosecutor's misconduct compelled reversal (p. 727).

In the case at bar, the district attorney did not depict the appellant as the sort of criminal who would threaten witnesses with bodily harm in order to avoid prosecution. Furthermore, there was ample evidence that appellant knowingly committed the offense charged. The bare facts that appellant's account was overdrawn by such a large amount and that this situation continued for a period of months would support an inference that he must have realized that the account did not contain sufficient funds to cover his numerous checks. Even after appellant was present at a preliminary hearing and heard testimony that his account was closed, he continued to write checks, asserting that these checks were issued upon promises to hold them. Appellant's story was not corroborated by one merchant to whom he had issued a check. Under these circumstances, appellant's case could not have been prejudiced by the district attorney's remarks. The effect of the prosecutor's comments could have been wholly obviated by an admonitory instruction to the jury. Appellant's counsel failed to request any such instruction.

The principle of the *Chilcott* case controls, and the judgment is affirmed.

Kaufman, P. J., and Agee, J., concurred.