[Crim. No. 8649. Second Dist., Div. Three. Dec. 31, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ARTHUR H. RUBIN, Defendant and Appellant.

Herbert E. Selwyn, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and James A. Schmiesing, Deputy Attorneys General, for Plaintiff and Respondent.

FORD, J.—In each of five counts of an information the defendant was charged with the crime of issuing a check without sufficient funds in violation of section 476a of the Penal Code. In a trial by jury the defendant was found guilty as charged in the first four counts. The fifth count was dismissed. The punishment imposed was imprisonment in the state prison for the term prescribed by law. The defendant has appealed from the judgment.

A summary of the evidence will be given. With respect to the first count, Rosalie Mielcarz testified on behalf of the People. She was a teller in the main office of the United California Bank. On or about September 22, 1961, the de-

fendant presented to her, as a deposit to his account at the bank, a check drawn to his order on the First National Bank of Miami, Florida, for the sum of $300. She saw the check when it was later returned from Miami, together with a notice of protest. Attached to the check was a "return slip" containing the statement "Unable to locate account."

As to the second count, Mrs. Mielcarz testified that on or about October 4, 1961, the defendant presented a check to her as a deposit to his account at the United California Bank. The check was drawn on the First National Bank of Miami, Florida, to the order of the defendant for the sum of $750. It was dated October 2, 1961, and bore a signature "A. H. Rubin." Subsequently, she saw the check with a notice of protest attached "as well as a little slip."

There was no arrangement for credit with respect to either check. Each was endorsed for deposit only.

With respect to the third count, Mary Dube testified for the People. She was a teller at the United California Bank. On September 20, 1961, the defendant presented to her a check of that date drawn on the First National Bank of Miami payable to his order for the amount of $480. It was endorsed for deposit only. Subsequently she saw the check with a notice of protest attached.

Mrs. Dube also testified with respect to the fourth count. On or about October 6, 1961, the defendant presented to her for deposit a check for $480 bearing the date of October 5, 1961. It was drawn on the First National Bank of Miami and was payable to the order of the defendant.

Sam Buckles, an operations officer at the main office of the United California Bank, testified that the defendant's account was opened on August 25, 1961. The defendant was given immediate credit with respect to the four checks involved in this case. He drew checks on the account which were paid by the United California Bank. The four checks were returned to the United California Bank and notices of protest were received thereafter. The total overdraft in the defendant's account, which was charged off as a loss, was $1,749.45. There was no arrangement for the extension of credit to the defendant.

Frank A. Besser, a police officer for the City of Los Angeles, testified that he talked to the defendant on November 2, 1961. The defendant's statements were voluntarily made. He stated that he had written the four checks. He thought that the Miami bank account was still open, but he

knew that there were not funds on deposit sufficient to cover the checks. He deposited the checks in his Los Angeles bank account and had drawn and cashed checks on that account. The officer further testified that the defendant stated that he had been trying to sell airplanes and that, if he had been able to sell one, ''he would have been able to sell more than the checks he had issued.''

Each of the four checks and the return slip and notice of protest attached to it was received in evidence without objection.

Gordon Fields was called as a witness on behalf of the defendant. He was engaged in the business of public relations and met the defendant in connection with that business. The defendant showed him a letter dated October 17, 1961, from Braniff Airlines. Thereafter an agreement dated October 31, 1961, was signed by the defendant and the witness and other persons. The People's objection to any inquiry as to the two documents was sustained on the ground that they were not in existence until after the last check had been deposited in the United California Bank. Thereafter the witness testified that he knew the defendant on or before September 22, 1961. Part of his testimony was: ''We were, shall we say, under oral contract, talking about the different facets of the airplane industry.'' The witness entered into a contract with Mr. Rubin.

The defendant testified in his own behalf. He stated that he was an aircraft broker. An objection was sustained as to the nature of the negotiations he had had with Mr. Fields. Part of the defendant's testimony was as follows: ''You wrote those checks, that is true, isn't it? A. Yes, I did. Q. Now, sir, did you intent to defraud the bank in this matter? A. No, sir. Q. Sir, how did you intend to make good on those checks, or on that bank account? A. I had in excess of four million dollars worth of aircraft sales in negotiation during that time. My commissions on these sales were five percent or in excess of two hundred thousand dollars. Q. Whom were you negotiating with at that time, or for whom were you acting? A. Among others, Braniff Airlines, Vance Brecce, Phillips Petroleum Corporation and Twentieth Century Aircraft Company. Q. Sir, you do have a company? A. Yes, Aviation Corporation of America.'' He had had negotiations with Braniff Airlines prior to September 22. An objection on the part of the People was sustained as to an inquiry upon

the subject of whether the defendant had advertised in an aircraft-industry publication.

With respect to his lack of intent to defraud, the defendant further testified as follows: "A. At the time these checks were written there were several sales in negotiation period on these airplanes. It so happens that you cannot usually complete a sale and arrange for the financing of these airplanes. As I said, the amount was in excess of four million dollars. This cannot be done overnight. Consequently, there was some, what we might call, dragging of the feet. But I fully expected at the time those checks were written that the sales would have been made and commissions forthcoming and deposited in the bank to cover the checks. Q. You were going to make deposits in the bank in Miami, Florida, is that right? A. Yes, sir, that is correct, sir. Q. Is that where your mother lives? A. That's right. That is also where my home is."

On cross-examination the witness admitted a prior conviction of the offense of issuing checks without sufficient funds. He also testified as follows: "Q. You knew at the time you wrote these four checks, drawn on the First National Bank of Miami, that as to each individual check amount, that is, the three-hundred, the two four-eighties and the one seven-fifty, that you did not have funds in the bank as of that date to cover them? A. As of that date, yes. . . . Q. In other words, you would have drawn a check on our local California bank, knowing you did not have funds, except it wouldn't give you enough time? A. That is correct. I would not have been able to cover the check in time. Q. So the only reason you drew it on the Miami First National Bank was that you hoped by the time it took the checks to get down there that you could then rush funds down there to cover them, is that correct? A. That is correct, sir. I fully expected to have the funds in there to cover them." Over the objection of the defendant, the defendant was asked if his parole officer told him that he could not have a checking account. He answered that that was true.

In a brief filed by him prior to the filing of a brief by appointed counsel, the defendant contends that it was essential that he be indicted by a grand jury and that it was error to proceed by information. The contention is untenable. (*People* v. *McLaine,* 204 Cal.App.2d 96, 104 [22 Cal.Rptr. 72].)

It is asserted that there was a fatal variance between the pleading and the proof in that in each count it was

alleged that the check involved was drawn upon the United California Bank with knowledge of insufficient funds therein or credit therewith to meet the check upon presentation for payment, whereas the proof was that the check was drawn upon the First National Bank of Miami, Florida. But the record does not disclose that any objection was made in the trial court based on a claim of variance. Apropos is the reasoning of the court in *People* v. *Kitchens,* 164 Cal.App.2d 529, at page 547 [331 P.2d 127]: "Count V charged the passing at the Emporium of a fictitious American Trust Company cashier's check, while the proof showed that it was a First Western Bank check. In all other respects the proof conformed to the charge. No objection was made on the ground of variance at any time to the introduction of evidence under this count, nor was the claim of variance raised at any time in the trial court. This was, in effect, a waiver of the variance. (See *People* v. *Holland,* 158 Cal.App.2d 583, 586 [322 P.2d 983]; *People* v. *Pryor,* 17 Cal.App.2d 147, 151 [61 P.2d 773].) Moreover, the error in the name of the drawee bank was not material. Defendants are fully protected against further charges based on the same offense. (See *People* v. *Leiva,* 134 Cal.App.2d 100, 103 [285 P.2d 46].)" In the present case no prejudicial error resulted from the variance.

■■■ The contention is made that the evidence was insufficient to support the verdict. The argument set forth is that the use of the notices of protest as evidence of any element of the offense charged was a violation of due process. The applicable law, however, is set forth in *People* v. *Hollander,* 163 Cal.App.2d 379, at page 381 [329 P.2d 740]: "Section 476a, subdivision (c) of the Penal Code provides that a notice of protest 'shall be admissible as proof of presentation, nonpayment and protest and shall be presumptive evidence of knowledge of insufficiency of funds' in the bank on which the protested check is drawn. Section 8208 of the Government Code provides that: 'The protest of a notary public, under his hand and official seal, of a bill of exchange or promissory note for nonacceptance or nonpayment, specifying:

" ' (a) the time and place of presentment.

" ' (b) the fact that presentment was made and the manner thereof.

" ' (c) the cause or reason for protesting the bill.

" ' (d) the demand made and the answer given, if any, or the fact that the drawee or acceptor could not be found, is

prima facie evidence of the facts recited therein.' '' The court further said (163 Cal.App.2d at p. 383) : "Thus the protests and notices of protest were properly admitted. Their authenticity was established by the signature and seal of the Arizona notary public. The courts of California take judicial notice of that seal. No further authentication was required.''

But even if the notices of protest be entirely disregarded, the defendant's position is not aided. ■ As stated in *People* v. *Ditson,* 57 Cal.2d 415, at pages 445-446 [20 Cal. Rptr. 165, 369 P.2d 714] : "It is, of course, elementary and unquestioned that a defendant who chooses to testify is just as competent to establish the corpus delicti as any other witness.''■ In the present case the defendant testified that he knew that he did not have sufficient funds in the Miami bank to cover any of the four checks. ■ Presentment of the check to the bank upon which it was drawn was not a necessary element of the offense. (*People* v. *Jorden,* 199 Cal. App.2d 271, 273 [18 Cal.Rptr. 587].) ■ The sole issue in dispute was whether the defendant had the requisite intent to defraud.

The jury was instructed that intent to defraud was a necessary element of the offense and the nature of that element was defined for them. The evidence was sufficient to support a determination by the jury that the defendant acted with such intent. Consequently, the judgment must be affirmed unless prejudicial error arose because of other matters which remain for consideration.

■ The defendant contends that the judgment must be reversed because of misconduct on the part of the deputy district attorney. Attention is directed to questions asked of the defendant on cross-examination after the defendant had admitted that in 1960 he had been convicted of the felony of issuing a check without sufficient funds. The inquiry was as follows: "Q. Now, you knew, did you not, sir, that as far as the Miami account was concerned, that that had been closed since 1958 ? A. The account has not been closed. The account was not closed in 1958, sir, and the checks were not returned because the account was closed. Q. I see. But at the time you were convicted in 1960, sir, of writing checks without sufficient funds, you claimed at that time that you were going to deposit a $750.00 check there at the bank, and there was no account at that time, was there, sir ? A. You will notice, sir, it is not on the same bank. Q. Oh, it is a different bank ? A. That is correct.'' Aside from the fact that no objection to

the inquiry was interposed on behalf of the defendant, there is no basis for assuming that the questions were not asked in good faith for the purpose of disclosing a prior offense committed under similar circumstances. Such evidence would be admissible for the purpose of showing that each check involved in the present case was made and delivered "wilfully, with intent to defraud." (See *People* v. *Cuthbertson,* 176 Cal.App.2d 393, 395 [1 Cal.Rptr. 435]; *People* v. *Reseigh,* 200 Cal.App.2d 301, 303 [19 Cal.Rptr. 199]; *People* v. *Dick,* 200 Cal.App.2d 424, 431 [19 Cal.Rptr. 317].)

█ Complaint is made of the reference by the deputy district attorney in his argument to the jury to the defendant's testimony that his parole officer told him that he could not have a checking account. While the trial court should have sustained the objection to the inquiry as to the instructions the defendant had received from his parole officer, which would have eliminated the basis for reference to the matter in argument, the error does not appear to have been prejudicial. █ Moreover, error cannot be predicated upon the reference in argument to the notation "Unable to locate account" on the return slip attached to the first check, because no objection was made to that slip when it was offered in evidence and, furthermore, no objection was made to the argument.

█ The defendant asserts that the court made erroneous statements of law in the presence of the jury which were prejudicial in view of the defense upon which the defendant placed reliance. Such statements were: THE COURT: Are you contending then if I think I will get a check for a thousand dollars next Monday that I can write a check today on a bank that I know I don't have the money in because I expect to have the money there next Monday? MR. PARKS [deputy public defender]: It is my feeling that if he had a reasonable expectancy it would bear on whether he had an intent to defraud. THE COURT: I would like to have some law on that, or a case that says you could; I would be glad to read it. . . . THE COURT: The fact he was negotiating is not material. Unless you can give me a case which says I can write a check today on a bank that I expect to make an account good next Monday, if you can show me a case where that was held to be a good defense, I will be glad to read it. MR. PARKS: Your Honor, I would need time to research it. I don't have the cases at the moment. I thought it was set-

tled if he had a reasonable expectancy, it would bear upon—— THE COURT: I have never read that law. I would be glad to have you find that for me. MR. POWERS [deputy district attorney] : The intent goes to the offenses charged here; the fact that on a subsequent date he intended to make good these checks, he is entitled to explore his intent on or about the date of the checks, the 22nd of September to the 6th of October, and I make no objections to questions directed to that intent during that time.''

It is true that the court made a misleading statement of the law. The applicable law is set forth in *People* v. *Griffith,* 120 Cal.App.2d 873, at page 880 [262 P.2d 355] : ''In negotiating a check, the maker does not necessarily represent that he then has in the bank funds out of which it will be paid; but he only represents, by the act of passing the check, that it is a good and valid order for its amount and that the existing state of facts is such that in the ordinary course of business it will be paid on presentation. One who negotiates a check with knowledge he has not sufficient funds in the bank to meet it—but who has good reason to believe, and honestly does believe, that it will be paid—cannot be said to have an intent to defraud the payee of the check. (See cases collected 35 A.L.R. 384; 95 A.L.R. 499.) Reasonable expectation of payment constitutes a defense to the charge. (*People* v. *Becker,* 137 Cal.App. 349, 354 [30 P.2d 562].)'' (See also *Williams* v. *United States,* 278 F.2d 535, 537; 1 Witkin, Cal. Crimes, § 486.)[1]

It cannot be said, however, that the misstatement of the law by the court was prejudicial. Thereafter the court permitted the defendant to testify as to his expectation of funds in support of his defense of lack of intent to defraud. That evidence was before the jury and there is no reason to assume that the jurors did not give it proper consideration with

---

[1]Witkin states in part: ''At first glance it would appear wholly irrelevant that the defendant who knowlingly gives a bad check expects to receive funds subsequently from somewhere to cover it. The crime, if committed at all, is committed when the check (payable on demand) is drawn; if at that time the drawer knows that there are no funds, he cannot have any reasonable expectation that it will be paid then (except where there is an arrangement or practice of honoring overdrafts).

''But this reasoning ignores the essential element of intent to defraud, and the cases clearly hold that evidence of reasonable expectation of funds is admissible on that issue. (See *People* v. *Becker* (1934) 137 Cal.App. 349, 354 [30 P.2d 562]; *People* v. *Gaines* (1951) 106 Cal.App. 2d 176, 179 [234 P.2d 702]; *People* v. *Griffith* (1953) 120 Cal.App.2d 873, 880 [262 P.2d 355].)''

respect to the issue of intent to defraud in reaching their verdicts. But, in any event, the rule of law upon which the defendant relies requires that there be a "reasonable expectation of funds" as the source for payment of the check upon its presentation. ▆ As stated in *Williams* v. *United States, supra,* 278 F.2d 535, at page 537: "The expectation of the defendant must, however, be more than mere hope. The circumstances must be such as to justify a reasonably certain belief that funds will be available. See *United States* v. *Broxmeyer, supra* [192 F.2d 230]; *People* v. *Becker* (1934) 137 Cal.App. 349 [30 P.2d 562]." ▆ The evidence of the defendant in the present case fell short of meeting that criterion.[2] (See *State* v. *Daymus,* 90 Ariz. 294 [367 P.2d 647, 654].)

▆ There was no prejudicial error in sustaining the objection of the People to the introduction in evidence of the newspaper dated September 22, 1961, which contained an advertisement stating that the defendant's company was offering aircraft for sale. Since it was at most an offer to sell and not a sale in the course of consummation, it was only of slight evidential value with respect to the issue of the defendant's intent at the times he deposited the four checks in his account at the United California Bank. The two other documents offered by the defendant came into being after the last of the four checks had been deposited by the defendant and were properly excluded since they did not bear on the intent of the defendant at the relevant times but related to future matters.

▆ The defendant contends that the trial court erred in that it should have instructed the jury upon the subject of circumstantial evidence. (See *People* v. *Yrigoyen,* 45 Cal.2d 46, 49 [286 P.2d 1].) But in the present case it is apparent that the jury refused to give credit to the defendant's testimony that he had a reasonable expectation that funds would be forthcoming to cover the checks which he had drawn on

---

[2]On cross-examination the defendant testified in part as follows: "Q. Well, it was your intent at the time that you, we'll say, took this first check on September 22nd, drew it on the First National Bank, you were to get funds down there at some time after the 22nd to cover the check, were you not? A. That is correct. Q. All right, on the 2nd of November had you done anything by way of deposit or putting money in this First National Bank of Miami? A. What was that date again, please, sir? Q. The date of your arrest, November 2nd, I'm taking your word. A. No, sir; I was still in negotiations."

the Miami bank. There is no reason to conclude that the jurors would have found an intent to defraud had they actually believed that the defendant intended and reasonably expected to be able to meet the checks and that he had no notion of throwing the risk of nonpayment on anyone else. (Cf. *United States* v. *Broxmeyer*, 192 F.2d 230, 232-233.) Since the jury rejected his version of the matter, it is not reasonable to conclude that the giving of instructions on the subject of circumstantial evidence would have had any effect on the result. Consequently, there could be no prejudicial error. (See *People* v. *Roberts*, 167 Cal.App.2d 238, 244 [334 P.2d 164].)

Other contentions raised by the defendant have been considered but they are without merit and do not warrant discussion herein.

The judgment is affirmed.

Shinn, P. J. and Files, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 26, 1964.