PEOPLE v. JACOBSON.

1. CRIMINAL LAW—WHAT CONSTITUTES OFFENSE UNDER STATUTE PROVIDING PENALTY FOR ISSUING CHECK WITHOUT FUNDS IN BANK.
   Wrongful conduct for which Act No. 142, Pub. Acts 1923, provides penalty, is false representation, either express or implied, incident to giving of check, that maker then has funds on deposit from which bank will pay check on presentation, with intent thereby to perpetrate fraud.

False pretenses or confidence game through means of worthless check or draft, see annotation in 35 A. L. R. 344.

2. SAME—WHERE PAYEE HAS NOTICE OF LACK OF FUNDS IN BANK
NO FRAUD PERPETRATED.

It is not possible for maker to perpetrate fraud under Act No.
142, Pub. Acts 1923, if check is given by maker and accepted
by payee with latter's full knowledge that maker does not then
have either deposit or credit at bank which will result in pay-
ment of check on presentation; that payee may have been
defrauded in some other manner, being insufficient to sustain
prosecution under this statute.

3. SAME—MAKER NOT GUILTY UNDER STATUTE WHERE HE INFORMED
PAYEE OF LACK OF FUNDS.

Where maker informed payee that he did not then have money
or credit at bank sufficient to cover check, but said he would
have money in bank next forenoon, he is not guilty of intent
to defraud within terms of Act No. 142, Pub. Acts 1923, al-
though he failed to have money in bank as he promised to do.

Error to Monroe; Root (Jesse H.), J. Submitted
October 17, 1929. (Docket No. 146, Calendar No.
34,370.) Decided December 3, 1929.

Herbert G. Jacobson was convicted of issuing
checks without sufficient funds in the bank to cover
same in violation of Act No. 142, Pub. Acts 1923.
Reversed.

*Wm. F. Haas* and *Thomas R. Manton,* for appel-
lant.

*Wilber M. Brucker,* Attorney General, and *Wm. L.
McAran,* Prosecuting Attorney, for the people.

NORTH, C. J. The defendant reviews by writ of
error his conviction under Act No. 142, Pub. Acts
1923, which provides:

"Any person who with intent to defraud, shall
make or draw or utter or deliver any check, draft
or order for the payment of money, to apply on
account or otherwise upon any bank or other de-
pository, knowing at the time of such making, draw-

ing, uttering or delivering, that the maker, or drawer, has not sufficient funds in or credit with such bank or other depository, for the payment of such check, draft, or order, in full, upon its presentation, shall be guilty of felony, etc.''

The question presented is this: Is one guilty of violating this statute who at the time he gives the check to the payee informs him that there is not then in the bank funds with which to meet the check, but promises the payee such a deposit will be made within a stated time, followed by failure to make the deposit? The defendant's testimony as to what he told the complaining witness in this case relative to the funds in the bank is somewhat different from the testimony of the people's witnesses on that subject. The defendant testified:

''Mr. Weber (the payee) said, 'I'll take your check for $75, providing it is good tomorrow.' I said, 'I feel certain that the check will be good tomorrow and I will try to make it good. At this time I have no money in the bank and I want that clearly understood.' Then the check was given.''

The defendant was corroborated by a witness who was present at the conversation, and this witness claimed Weber definitely understood at the time he received the check that Jacobson did not then have the money in the bank.

The people produced two witnesses on this phase of the case. The complaining witness, Mr. Weber, testified:

''He (Jacobson) said that he would have the money in the bank 'tomorrow at 11.' I said, 'That is fine; in case there is any little slip,' I said, 'I won't be there until 12.' He said the money would be there, but he did not say anything about having any

there at the time he handed me that check. I didn't know he didn't have any money at that time. * * * He said he would have it there by 11, and I said I would put it off until 12.''

The other witness, a justice of the peace, testified:

''* * * And after he (Jacobson) said he had promised to have the money there tomorrow morning at 11 without fail, and Weber said in answer to him, he said, 'I'll give you better than that, if you have it by 12 it will be all right.' * * * He (Jacobson) said that he would have the money there by 11 o'clock the next forenoon, and Mr. Weber said he would give him until 12 o'clock.''

Regardless of the exact words used, we think the testimony is subject to only one fair construction, which is that it was clearly understood by Weber when the defendant gave him this check that the defendant did not then have funds or credit at the bank to meet the check, but that the defendant would arrange in the forenoon of the next day to make the check good. This check was given to release some of defendant's property from an attachment placed thereon by Weber incident to the collection of an indebtedness, a part of which was admitted by the defendant and a part denied. In determining whether defendant's conviction is sustained by the record, we must be mindful of the purpose of this statute. Obviously it was to give greater dependability to the use of checks in the consummation of commercial transactions. The false representation, either express or implied, incident to the giving of a check, that the maker then has funds on deposit from which the bank will pay the check on presentation, with intent thereby to perpetrate a fraud, is the wrongful conduct for which this statute provides a penalty. It is not possible to thus perpetrate

a fraud if the check is given by the maker and accepted by the payee with the latter's full knowledge that the maker does not then have either a deposit or credit at the bank which will result in payment of the check on presentation. Such knowledge negatives the possibility of the payee being defrauded in the manner penalized by this statute. That he may have been defrauded in some other manner will not sustain a prosecution under this statute. The defendant's promise to make a deposit on the following day with which to meet this check was no more than a promise to pay on the following day. Notwithstanding under certain circumstances promises made in bad faith as to future conduct may be the basis of a charge of fraud, such is not the offense embodied in this statute.

"Issuing a cheque on an account which has not sufficient funds may be quite an innocent matter. Intent to defraud may be implied from the facts in some cases but in a case such as this it would be dangerous to do so without other proof of such intent. The real issue and crux of the case is the 'intent to defraud.' The onus to prove this is on the Crown." *Rex* v. *Levine* (Man.), 3 West. Wkly. Rep. (1922) 429.

In reviewing a prosecution under a similar statute in the case of *Hammack* v. *State,* 114 Miss. 611 (75 South. 436, 437), it was said:

"The appellant perpetrated no fraud on Moore by giving him the check here in question; for he informed Moore at the time that he did not have sufficient funds in or credit with the bank on which it was drawn for its payment. The wrong, if any, which was done Moore by appellant was, not giving him the check, but failing to comply with his (appellant's) promise to deposit sufficient money with the

bank to cover it. The case, therefore, does not come within the intent of chapter 120, laws of 1916, so that the judgment of the court below will be reversed and appellant discharged.''

See, also, *State* v. *Miller,* 47 Ore. 562 (85 Pac. 81, 6 L. R. A. [N. S.] 365), and *State* v. *Howd,* 55 Utah, 527 (188 Pac. 628).

''The mere lack of funds of the maker of a check at the bank upon which it is drawn will not give rise to a presumption of fraud if the payee of the check is informed by the maker at the time it is given that the money to meet it is not on deposit. In such case the payee takes the chance of the check being made good later, and the arrangement merely represents a form of credit extended to the maker. It might well be possible to give a check under such circumstances with a fraudulent intent and effect, but the case would not be within that clause of the statute which provides for a *prima facie* presumption of such intent.'' (Syllabus.) *Turner* v. *Brenner,* 138 Va. 232 (121 S. E. 510).

Jacobson did not mislead, deceive, or defraud Weber by leading him to believe that he (Jacobson) at the time of giving this check had either funds in or credit at the bank sufficient to cover the check. He expressly informed Weber to the contrary. On the ground that this record is devoid of proof establishing an intent on the part of the defendant to defraud within the terms of this statute, we must set his conviction aside. It is so ordered, and judgment of acquittal will be entered in the lower court.

Fead, Butzel, Wiest, Clark, McDonald, Potter, and Sharpe, JJ., concurred.