189 P.2d 717

**STATE v. ELLIS.**

No. 979.

Supreme Court of Arizona.

Feb. 16, 1948.

Jennings & Tenney, of Phoenix, for appellant.

John L. Sullivan, Atty. Gen., and Chas. D. McCarty, Asst. Atty. Gen., for appellee.

UDALL, Justice.

The defendant, Bobby Arthur Ellis, was convicted of a felony, to wit: obtaining money and merchandise by means of a false and bogus check. He has appealed from the judgment of conviction and the denial of his motion for a new trial. There are but two assignments of error: (1) the court erred in denying defendant's motion for an instructed verdict; and (2) certain instructions and comments made by the court to the jury were prejudicial.

■ The state's testimony was adduced from three bank officials, the inspector in charge of the forgery detail of the Phoenix Police Department, and the store manager who received the "bogus" check. The defense offered no testimony whatsoever, but relied strongly on self-contradictory statements of the store manager, Mr. Jaffe. In considering the first assignment it is our duty to state the facts in the light most favorable to a sustaining of the jury's verdict. The evidence thus considered discloses that a day or two before May 10, 1947, the defendant, in company with one Patricia Aitkin went to Baker's Shoe Store in downtown Phoenix where a small cash purchase was made. At that time, Miss Aitkin, a former employee in good repute at the store, introduced the defendant to manager Jaffe as her husband. On the morning of May 10th the defendant went to the head office of the First National Bank of Arizona in Phoenix where he had the Assistant Vice President prepare a draft on his "grandmother's" account with the Farmer's National Bank of Checotah, Oklahoma. He signed the draft and the usual bank signature cards, and advised the officer that when the collection under the draft had been made he would open a checking account with the bank. The defendant then went to Baker's Shoe Store where he purchased merchandise priced at $12.22. In payment he tendered his check on the First National Bank of Arizona for $15. The manager accepted the check and gave him $2.78 in change. As he emerged from the store he was arrested by the inspector. It further appears from the evidence that Patricia Aitkin was not his wife, that the draft was drawn on a non-existent bank, that his address appearing on the check was fictitious, and that the defendant had never, at any time, had an account or a deposit with the drawee bank.

■ This recital shows that thus considered there was ample evidence to warrant a conviction. The trial court did not err in denying the defendant's motion for an instructed verdict.

With regard to their second assignment of error, defense counsel concede that the original instructions given by the court

were proper. The court at that time fully and completely instructed the jury as to the pertinent rules of law governing the offense, using verbatim some of the language of the leading Arizona case on bogus checks, Williams v. Territory, 13 Ariz. 27, 108 P. 243, 27 L.R.A.,N.S., 1032.

The alleged errors complained of, however, occurred when, after some deliberation, the jury was returned into court and these proceedings ensued:

"The Court: Ladies and gentlemen of the jury, I understand that you desire the instructions again, or some additional instructions? Is that right?

"A juror: We are interested particularly in the charges, the definite charges of what he is charged on, the exact wording.

"The Court: All right. I think I gave you an instruction on that which is specific. I will give it to you again. You are instructed, ladies and gentlement, *that this charge against this defendant is not based upon any false representation or misrepresentation that he made at the time and place of passing the check in question.* The charge here is that he passed a bogus check. The charge is that on or about the 10th of May, that the defendant did then and there with the intent to cheat and defraud the Baker's Shoe Store, obtain from the Baker's Shoe Store· merchandise of the value of $12.22 and lawful money in the sum of $2.78 by means of and by use

of a false and bogus check in the amount of $15.00. Now I instructed you that a check given by a person upon a bank in which he has no funds, and which he has no reason to suppose will be honored is a bogus check. *You are not concerned, therefore, ladies and gentlemen, with whether or not the defendant made any representations of any kind.* The sole question for your determination is, did the defendant obtain this merchandise by means of a bogus check? In other words, your sole question is, did he pass a check to the Baker's Shoe Store upon a bank in which he on that date had no funds and which he had no reason to suppose would be honored. Now, is that clear?

"The Juror: Yes.

"The Court: That is your sole question, did he do it with intent to cheat and defraud? That is a part of the Statute. Then if he passed a check, did he—

"Mr. Tenney: I wish to enter my exceptions to the instruction just given in the matter. The defendant in the matter excepts to the instruction just given by the Court on the law concerning this case, upon the grounds and for the reasons that the Court stated that no element of misrepresentation came into the case, whereas we believe it to be the law that if the check was given on a representation that there was no money in the bank at the present time and that a draft was then submitted—

"The Court: *Misrepresentation doesn't enter into it.*

"Mr. Tenney: Just let me make my exceptions.—which would clear at a later date, the defendant could under no circumstance be convicted of obtaining money by the use of a false and bogus check.

"The Court: Ladies and gentlemen, I have instructed you as to the law. Counsel has the right to except. The law is still as I have given it to you. You may retire."

"A Juror: Your Honor, may I ask you a question? Can a party be convicted of all three charges?

"The Court: What is that?

"The Juror: Passing a bogus check, intention to cheat and defraud? Must it be all three.

"The Court: That is just the offense. The statute reads, 'Any person who with intent to cheat and defraud, obtains or attempts to obtain from another person money or property by means of or by use of a bogus check.' The *intent or intention* is manifested by the circumstances connected with the offense, as I instructed you, and the intent must be gathered from the conduct of the parties. Does that clarify your—

"A Juror: Could you give us that statement again? I am kind of thick. I would like to get your instruction clear again.

"The Court: On what?

"The Juror: I am kind of thick on that. Just what you said and he objected to it. Could we have him read it again?

"The Court: All right, I will read it again." (Emphasis supplied.) (Then followed a colloquy between court and counsel out of the hearing of the jury, after which the court re-read to the jury that portion of section 43-2614 under which the information was drawn.)

From the foregoing it is apparent that the jury were muddled and confused else they would not have requested further enlightenment. The matters specifically objected to as being misleading and an erroneous statement of the law are the italicized portions of the court's supplementary instructions set forth haec verba, supra.

█ It was not incumbent upon the state in a bogus check prosecution to show that specific false representations *extrinsic* to the check itself were made at the time the check was passed. This rule is well stated in 22 Am.Jur., False Representations, Sec. 64, p. 477: "The general rule is that the making and delivery of a check amounts to a representation that the check is good and that a representation extrinsic to the check itself is not a necessary element of an offense under worthless check acts." See also 35 C.J.S., False Pretenses, § 21, et seq.; Clark and Marshall, Law of Crimes, 3d Ed., Sec. 357, p. 475; Burdick, Law of Crime, Sec. 645h, p. 497; and Bishop, Criminal Law, Sec. 421, p. 344.

See also Williams v. Territory, 13 Ariz. 27, 108 P. 243, 27 L.R.A.,N.S., 1032.

■ Had the offense charged been a "confidence game" which is made a felony under this same omnibus statute, sec. 43-2614, a contrary rule prevails because the very gist of such an offense is the use of false representations to gain the confidence of the victim, and the state fails of proof unless such representations are *independently* established. Clark v.-State, 53 Ariz. 416, 89 P.2d 1077.

Discussing statutes making it a crime to obtain money or property by means of a worthless, fale or bogus check, it is stated in 35 C.J.S., False Pretenses, § 21: "Although certain distinctions have been indicated, the crimes denounced by such statutes are generally regarded as more or less akin to the broader offense of obtaining money or property by false pretenses, and the elements are to a certain extent the same. Thus, an intent to defraud is generally held to be an essential element of the offense under such statutes, and so, too, is defendant's knowledge of the insufficiency of the funds or lack of credit."

■ The trial court was in error in advising the jury that they were not to be concerned "with whether or not the defendant made any representations of any kind", and in asserting, "Misrepresentation doesn't enter into it", because our statute, differing from those of other states, specifically provides that the acts condemned are only criminal when done "with intent to cheat and defraud". Sec. 43-2614, A.C.A.1939. As applied to criminal intent, or lack of it, representations may become very material in cases of this character. 35 C.J.S., False Pretenses, § 21 and 22 Am.Jur., False Pretenses, Sec. 66, p. 478.

With these principles to guide us let us examine the testimony of manager Jaffe which was a confusing maze of self-contradictions. On direct and re-direct examination his testimony, if believed by the jury, would justify the conviction; however on cross-examination the answers given by him, if given full weight, would have necessitated an acquittal. The vice of the giving of that portion of the court's instructions complained of was to withdraw from the consideration of the jury that part of Jaffe's testimony that was unfavorable to the state. He admitted, under cross-examination, that when the check was passed the defendant represented to him that he would not have funds available for payment until the drawee bank collected a draft he had drawn on an Oklahoma bank. And there was other testimony by Jaffe from which the jury might have implied that the defendant's representations fully disclosed to him that there were no funds in the bank, and that the check couldn't be cashed for several days. Further, in answer to a question

12

of the court Jaffe conceded that he mistakenly thought the draft was a deposit slip.

The courts are unanimously agreed that, under statutes of the type under consideration, disclosure by the drawer to the payee that he has not at the time sufficient funds in the bank to meet the check, purges the transaction of its criminal character, because under such circumstances the element of fraudulent intent is lacking and the transaction in its essential nature is an extension of credit to the drawer. 95 A.L.R. 494, sub. VIII.

If the supplementary instructions of the court precluded the jury from considering exculpating admissions by Jaffe of representations made by the defendant which revealed a disclosure purging the transaction of its criminal character, the substantial rights of the defendant were prejudiced.

We cannot escape the conclusion that the instructions complained of denied the jury the right to consider whether the defendant's representations actually disclosed to the store manager that he did not then have funds in the bank, which was the only defense, however improbable, the defendant had.

The judgment of conviction is reversed and the cause remanded for a new trial.

STANFORD, C. J., and LaPRADE, J., concurring.