[Crim. No. 5324. In Bank. Sept. 19, 1952.]

THE PEOPLE, Respondent, v. BRYAN K. BURNETT, Appellant.

Edgar G. Langford and Everett H. Smith for Appellant.

Edmund G. Brown, Attorney General, Dan Kaufmann, Deputy Attorney General, James Don Keller, District Attorney (San Diego), and Clifford L. Duke, Jr., Deputy District Attorney, for Respondent.

GIBSON, C. J.—Defendant was charged by information with issuing two checks without sufficient funds in violation of section 476a of the Penal Code.* The first count was on a check for $992.68 issued to Ed Lewis, and the second count was on a check for $1,480 issued to Joseph Bacorn. Both checks were drawn on the general account of William P. Osterhout, Inc., and were dated February 9, 1951. These and all other checks of the corporation were signed by Mrs. Winn, the treasurer, and were cosigned by defendant, who was the secretary. Defendant was convicted on the Lewis count, but the jury was unable to agree on a verdict as to the Bacorn count. Defendant appeals from the judgment and from an order denying his motion for new trial.

The principal question on this appeal is whether defendant was prejudiced by an erroneous instruction given by the trial court, and we must therefore examine the entire record

*Pen. Code, § 476a, provides: "Any person who for himself or as the agent or representative of another or as an officer of a corporation, willfully, with intent to defraud, makes or draws or utters or delivers any check . . . knowing at the time of such making, drawing, uttering or delivering that the maker or drawer or the corporation has not sufficient funds in, or credit with said bank . . . for the payment of such check . . . in full upon its presentation, although no express representation is made with reference thereto, is punishable by imprisonment in the county jail for not more than one year or in the state prison for not more than fourteen years."

in order to determine whether there has been a miscarriage of justice. (Const., art. VI, § 4½.)

The corporation owed Lewis $1,292.68 for some work he had done for it, and two checks were issued to pay the debt. One was for $300 and was dated February 5, and the other, the check upon which the prosecution was based, was for $992.68 and was dated February 9. Both checks were signed by Mrs. Winn as treasurer and were cosigned by defendant as secretary. Mrs. Winn, who was not prosecuted, claimed that defendant ran the corporation. The evidence for defendant, however, was that Mrs. Winn handled its financial affairs and that she told Lewis and another witness that she owned the corporation. The testimony was also conflicting as to the time and circumstances of delivery of the checks to Lewis.

The evidence for the prosecution was that on February 5, Lewis came into the front office of the corporation and asked Mrs. Winn for payment of his bill. She took him to defendant's office where he was told by defendant that there were not enough funds in the bank at that moment to pay the bill in full, but that he would give Lewis a check for $300 and pay the balance later in the week. Lewis agreed to accept the part payment, and a check, dated February 5, for $300 was issued to him and was duly paid. Later in the week, on February 9, he returned and asked Mrs. Winn for payment of the balance. She went to defendant's office and told him that Lewis was requesting further payment on his bill. He directed Mrs. Winn to make out a check for $992.68 for the balance, stating to her that there were sufficient funds in the bank to cover it. She then delivered the check to Lewis.

On the other hand, defendant's evidence was that on February 3 or 4, Lewis came to Mrs. Winn and asked her why he couldn't get paid, and since defendant had been with the corporation longer than Mrs. Winn, they came back to talk with him. He and Mrs. Winn endeavored to explain to Lewis that finances were not running smoothly because collections were slow, but that he would be paid in a few days. Mrs. Winn also told Lewis that she intended to put into the company money that she expected to get from certain notes and escrows. Lewis left, saying that he had to have some money and that he would be back. When Lewis returned on February 5, defendant was in his office transacting business with William Mettler, a salesman. Mrs. Winn entered the office and asked defendant to sign the two checks in favor

of Lewis, one for $300 dated February 5 and one for $992.68 dated February 9. Defendant signed them without asking Mrs. Winn any questions, and she left the room with the checks. Mettler testified that he was in the office on that day and saw defendant sign some checks at Mrs. Winn's request and that immediately thereafter he saw Mrs. Winn, in the outer office, hand Lewis two checks. It was also shown that the $300 check to Lewis was numbered 1003, that the second check to Lewis for $992.68 was numbered 1004, and that several other checks bearing dates after February 5, but prior to February 9, bore higher numbers than the two Lewis checks. This evidence tends to show that both checks were made out and delivered to Lewis on February 5 and hence that the check for $992.68 was a postdated check which was to be held until the later date because there were not sufficient funds to pay it.

After deliberating several hours the jurors returned to the courtroom, and the foreman announced that they had agreed as to one count but were deadlocked on the other. The court directed them to deliberate further, but before the jury retired again one of the jurors asked, "Is intent to defraud, if you give a check with not sufficient funds and at the time that you deliver the check you informed the person to whom you issued that check that there is not sufficient funds? If he demands it, you say, 'Well, I give you the check, but there is not sufficient funds in the bank to cover that check,' is that to be construed as intention to defraud?" The court replied, "That is a question for the jury to determine after considering all of the facts and circumstances of the case." The jury returned in about a half-hour with a verdict of guilty on the Lewis count but was unable to reach a verdict on the Bacorn count.

The court erred in its instruction. The jury should have been told that there can be no conviction under section 476a if the payee is informed by the maker at the time of delivery that there are insufficient funds to pay the check. (*In re Griffin,* 83 Cal.App. 779, 781 [257 P. 458] ; *People* v. *Wilkins,* 67 Cal.App. 758 [228 P. 367].)

The prosecution contends that the error was not prejudicial because it went only to the Bacorn count. It is claimed that the record indicates that the jury had already agreed upon the Lewis count when the instruction was given and, therefore, that the juror's inquiry and the erroneous instruction related only to the charge on the Bacorn check as

to which the jurors failed to agree. We cannot say, however, that the effect of the error was so limited, since both the inquiry and the instruction were applicable to the Lewis count and may have been so understood by the jury. Even if we should assume, as claimed, that the jurors had reached an agreement on the Lewis count when the inquiry was made, we have no way of knowing whether their conclusion at that time was guilty or not guilty, and it is possible that the erroneous instruction caused them to reconsider and change their decision. Obviously, we should not indulge in speculation as to what occurred during the jury's deliberations.

The prosecution further contends that defendant was not prejudiced because, it is asserted, there was no evidence that Lewis was given notice at the time of delivery of the February 9 check that there were insufficient funds to pay it. It is clear from defendant's evidence, however, that the jury could have found that the Lewis check, dated February 9, was delivered February 5 and was given with the understanding that it was to be held until February 9, and notice of insufficiency of funds could be inferred from acceptance of the postdated check. As we have seen, not only was there testimony that both the February 5 check and the February 9 check were delivered to Lewis on February 5, but they were numbered consecutively, and other checks dated after February 5 but before February 9, bore higher numbers.

It has been held that where a maker claims that a check was postdated and was given with the understanding that the check was to be held until a future time, the mere fact of postdating is evidence of such an understanding. (*People v. Weaver*, 96 Cal.App. 1, 13 [274 P. 361].) Here, in addition, there are the added facts that the postdated check was given in conjunction with a currently dated check, and that both checks were given at the same time in payment of a single debt. It may be inferred from such circumstances that Lewis knew that he was accepting a postdated check, and that the two checks together were a representation of the maker that there were not sufficient funds currently available to pay it. The inference is strengthened by the fact that Lewis deposited one check immediately and held the other until February 9. Since there was ample evidence from which the jury could have found that the February 9 check was accepted by Lewis on February 5 with notice that there were insufficient funds and hence that there was no intent to defraud, and since the court, when specifically asked about

the effect of such notice, erroneously instructed the jury, we cannot say that a miscarriage of justice has not resulted.

The judgment and order denying a new trial are reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.