[Crim. No. 15551. In Bank. Jan. 26, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGER JOSEPH POYET, Defendant and Appellant.

## COUNSEL

Joseph V. Mazziotta, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, William H. Waysman and Rodney Lilyquist, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Defendant Roger Joseph Poyet was convicted by a jury of issuing a check without sufficient funds, a violation of Penal Code section 476a.[1] It was also charged and defendant admitted that he had suffered five prior convictions for violations of the same code section. He appeals from the judgment of conviction on the ground that disclosure to the payee of the present insufficiency of funds is a defense. We agree and reverse.

It is undisputed that on August 13, 1968, defendant paid for automobile repairs at Dixon Wheel Service with a check for $139.13 drawn on the Security First National Bank, Inland Center Branch. The check which he presented the bookkeeper was dated August 15, 1968, and he explained that he did not have sufficient funds in his account at that time,

---

[1]Defendant was acquitted of two counts of forgery.

but would deposit funds sufficient to cover the check by August 15. She accepted the check on this understanding and did not deposit it until August 14 or 15. The check was returned to the payee by the bank with the notation that the account had been closed.

Prosecution evidence indicates that, defendant opened an account at the Inland Center Branch with a $10 deposit on June 14, 1968. Two $40 deposits were made later in June, but none were made thereafter. By July 5, the bank had dishonored five checks of approximately $600 total face value. At this time the bank closed the account and sent defendant a letter notifying him of its action. The letter was returned marked "unknown." By August 13, a total of 10 checks with an aggregate face value of approximately $850 had been received and dishonored. The last, and thirty-ninth, check was dishonored by the bank on September 23. The total face value of all dishonored checks drawn on the account of defendant during the period of approximately three months was about $1,400.

Defendant testified that after opening the account he deposited part of his paycheck every week. He was certain that the branch manager would have contacted him personally about any problem with his account. He was only aware that one check given to his landlady had failed to clear, and he denied writing at least some of the checks that had been dishonored. At the time the check for $139.13 was written, defendant thought there was about $60 in his account and he intended to deposit his $95 paycheck on Friday, August 15. When defendant asked for his paycheck on that day, he was advised that his brother had already picked it up. At no time did he notify the payee of the check, Dixon Wheel Service, of this development.

Following the presentation of all evidence at the trial, defendant moved for a directed verdict pursuant to Penal Code section 1118.1. The motion was denied. He then requested an instruction that the disclosure of the present insufficiency of funds was a defense[2] to the charge. The instruction was refused by the court, and the subject matter was not covered in other instructions.

■   Statutes imposing criminal penalties on those who knowingly pass checks with insufficient funds on deposit in or credit with the bank on

---

[2]The requested instruction provides: "You are instructed that if you find the defendant informed the payee at the time of delivery that there were insufficient funds on deposit to pay the check and the payee consented to accept the check, you must return a verdict of not guilty to the charge of violation of section 476a, regardless of the fact the defendant may have subsequently failed to carry out a promise to subsequently deposit such funds."

which they are drawn are of two general types: those which do not require an intent to defraud and those which do. ■ Penal Code section 476a is of the latter type.[3] ■ While disclosure of present insufficiency of funds is not generally regarded as a defense to statutes not requiring intent to defraud (e.g., *State* v. *Avery* (1922) 111 Kan. 588 [207 P. 838, 23 A.L.R. 453]), such disclosure is a defense where fraud is an element. (See cases cited Annot., 35 A.L.R. 375, 383-384; Annots., 43 A.L.R. 49, 50; 95 A.L.R. 486, 494-496.)

In *People* v. *Bercovitz* (1912) 163 Cal. 636 [126 P. 479], we joined those jurisdictions holding that the fact alone that a check is postdated is not a defense, but we expressly reserved judgment on whether disclosure of an insufficiency of funds might be a defense.[4] In *People* v. *Burnett* (1952) 39 Cal.2d 556 [247 P.2d 828], we held that under the particular facts of that case the jury should have been instructed that there can be no conviction under section 476a if the maker informs the payee at the time of delivery that there are insufficient funds to pay the check.[5]

In neither *Burnett* nor the two underlying decisions (*In re Griffin* (1927) 83 Cal.App. 779 [257 P. 458]; *People* v. *Wilkins* (1924) 67 Cal.App. 758 [228 P. 367]) was there independent evidence of fraudulent intent. In the instant case, however, there is abundant evidence that defendant did not intend to make the promised deposit. Accordingly, the language in *Griffin* and *Wilkins* and in the controlling cases of several of our

---

[3]"(a) Any person who for himself or as the agent or representative of another or as an officer of a corporation, willfully, *with intent to defraud,* makes or draws or utters or delivers any check, or draft or order upon any bank or depositary, or person, or firm, or corporation, for the payment of money, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer or the corporation has not sufficient funds *in,* or *credit with said bank or depositary,* or person, or firm, or corporation, for the payment of such check, draft or order and all other checks, drafts or orders upon such funds then outstanding, in full upon its presentation, although no express representation is made with reference thereto, is punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than 14 years.

". . . . . . . . . . . . .

"(d) The word 'credit' as used herein shall be construed to mean an arrangement or undertaking with the bank or depositary or person or firm or corporation for the payment of such check, draft or order.

". . . . . . . . . . . . . ."

(Italics added.)

[4]In *Bercovitz* the evidence indicated the payee was unaware the check was postdated from Saturday to the following Monday. There was also apparently an express false representation that the maker had sufficient funds on deposit to cover the check. We declined to determine whether a postdated check was properly categorized as a check or a draft since both are covered by section 476a. Similarly, we need not reach the issue in the instant case.

[5]In Burnett the jury asked whether disclosure would be a defense. The trial judge replied in the negative.

sister jurisdictions (e.g., *State* v. *Ellis* (1948) 67 Ariz. 7, 12 [189 P.2d 717]; *State* v. *Bell* (1949) 69 Idaho 485, 486 [210 P.2d 392]) indicating that disclosure negates fraudulent intent is potentially misleading if not read in context. Clearly, with disclosure there can be no deception of a *present* insufficiency of funds. ■ We also agree that mere failure to keep a promise to deposit sufficient funds, standing alone, is not evidence that a check was issued with intent to defraud. It does not follow, however, that such a promise may not have been made with intent to defraud. (Cf. *People* v. *Ashley* (1954) 42 Cal.2d 246, 262 [267 P.2d 271].) If the only issue in the case at bench were the sufficiency of the evidence to show an intent to defraud, we would have no difficulty sustaining this conviction.

Only a few courts have directed their attention to the problem raised by a bad faith promise to deposit sufficient funds after disclosure of present insufficiency. In *People* v. *Jacobson* (1929) 248 Mich. 639 at pages 642-643 [227 N.W. 781], the court stated: "The false representation, either express or implied incident to the giving of a check, that the maker then has funds on deposit from which the bank will pay the check on presentation, with intent thereby to perpetrate a fraud, is the wrongful conduct for which this statute provides a penalty. It is not possible to thus perpetrate a fraud if the check is given by the maker and accepted by the payee with the latter's full knowledge that the maker does not then have either a deposit or credit at the bank which will result in payment of the check on presentation. Such knowledge negatives the possibility of the payee being defrauded in the manner penalized by this statute. That he may have been defrauded in some other manner will not sustain a prosecution under this statute. The defendant's promise to make a deposit on the following day with which to meet this check was no more than a promise to pay on the following day. Notwithstanding under certain circumstances promises made in bad faith as to future conduct may be the basis of a charge of fraud, such is not the offense embodied in this statute." (See also *State* v. *Zent* (1963) 92 Ariz. 334 [376 P.2d 861]; *State* v. *Creachbaum* (1970) 24 Ohio App.2d 31 [53 Ohio Ops.2d 117, 263 N.E.2d 675].)

In *Hubbard* v. *Commonwealth* (1959) 201 Va. 61 [109 S.E.2d 100], the court stated: "It is undisputed that the defendant drew and uttered the worthless check, knowing at the time that he did not have sufficient funds in, or credit with, the bank on which it was drawn. As we shall presently see, there is sufficient evidence to warrant the finding that he did this with intent to defraud Reynolds Pontiac, the payee of the instrument. But the evidence also shows, and the lower court so found in its opinion dictated from the bench, that the check was not given for a

'present consideration,' and that there would be some delay in its payment. Indeed, it is clear from Reynolds' testimony that he knew when he received the check that it was not then collectible and would not be 'good' until the defendant had made further arrangements with the bank on which it was drawn.

" 'The general rule is that the making and delivery of a check amounts to a representation that the check is good and that a representation extrinsic to the check itself is not a necessary element of an offense under worthless check acts.' 22 Am. Jur., False Pretenses, § 64, p. 477. Indeed, Code, § 6-129, in terms, dispenses with the proof of such 'express representation.' . . .

"Conversely, it is universally held that where, as here, at the time the check is drawn or delivered to him, the payee has knowledge, or an understanding, that it is not then good or collectible, the offense prohibited by statutes of this character has not been committed. [Citations.] This is so because there is then no false representation that the check is good, which is a necessary element of the offense at which the statute is directed." (201 Va. at pp. 64-65.)

We agree with the foregoing analyses. ▓▓ Penal Code section 476a, as similar statutes elsewhere, is directed at the specific representation, implicit in the making, drawing, uttering, or delivering of a check or draft, that at the time of making, drawing, uttering, or delivery the maker *then* has sufficient funds in or credit with the bank for payment of that check or draft and all other checks or drafts then outstanding. With disclosure of the insufficiency, the essential underlying misrepresentation no longer exists and the crime cannot be committed. ▓▓ No matter how fraudulent the promise to make a deposit sufficient to cover the check, disclosure of the present insufficiency of funds precludes conviction under this section.

▓▓ We are not unmindful that it has been suggested negotiation of a check does not necessarily represent that there are currently sufficient funds in the bank but only that in the ordinary course of business the check will be honored upon presentation. (*People* v. *Rubin* (1963) 223 Cal.App.2d 825, 834 [36 Cal.Rptr. 167, 9 A.L.R.3d 707]; *People* v. *Griffith* (1953) 120 Cal.App.2d 873, 880 [262 P.2d 355].) Those cases held that where the maker had a reasonable expectation that in the ordinary course of business there would be sufficient funds or credit with the bank, there was no intent to defraud even though the present insufficiency of funds was not disclosed. Without questioning the validity of their precise holdings, we disapprove of the language in *Rubin* and *Griffith* to the extent that it is inconsistent with our decision today.

■ The People concede that the present insufficiency of funds was disclosed to the payee. Thus, the evidence to support a conviction was insufficient as a matter of law. Accordingly, the trial court should have granted an acquittal on its own motion under Penal Code section 1118.1 at the completion of the prosecution's case. Clearly, denial of the defendant's motion for a directed verdict was improper. Had there been any dispute in the evidence as to whether there had been a disclosure of the insufficiency of funds, the requested instruction, though ungrammatical, would have been proper and should have been given in substance.

We do not condone defendant's conduct nor do we feel that it was lawful. ■ "[A] promise made without intention to perform is a misrepresentation of a state of mind, and thus a misrepresentation of existing fact, and is a false pretense within the meaning of section 484 of the Penal Code." (*People* v. *Ashley, supra,* 42 Cal.2d 246, 262.) In *Ashley,* we did caution against applying section 484 to ordinary commercial defaults. The evidence here, however, is more than sufficient to show that the failure to keep the promise was not merely a commercial default and that a conviction could have been sustained upon a proper charge under Penal Code section 484.[6]

■ Since proceedings on a correct charge may not now be commenced (Pen. Code, § 800), we need not reach the remaining contentions on appeal. The judgment is reversed.

Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**BURKE, J.**—I dissent. Section 476a, by its terms, applies to any person who wilfully, *with intent to defraud,* makes or delivers a check while knowing that there are insufficient funds on deposit for the payment thereof. As the majority concede, there was ample evidence to support a finding that, although defendant disclosed present insufficiency of funds, he nevertheless intended to defraud the payee, having no intention whatever of making the promised deposit. Thus, the evidence fits squarely within the express language of section 476a.

In my view, the applicable law and proper analysis of the question before us were set forth by Justice Kaufman in the dissenting opinion prepared by him in this case for the Court of Appeal, Fourth Appellate District, Second

[6]Penal Code section 484 defines theft and includes within such definition the following: "(a) Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, . . . is guilty of theft. . . ."

Division. That opinion, with appropriate deletions and additions as indicated,[1] is as follows:

[ ] As correctly pointed out by the majority, the crucial question is whether the court erred in refusing to give the instruction requested by defendant.

If *People* v. *Burnett,* 39 Cal.2d 556 [247 P.2d 828] is controlling, there can be no question that the refusal to give the requested instruction constituted reversible error. (*People* v. *Sears,* 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847].) Actually, if *Burnett* is controlling, defendant was entitled as a matter of law to acquittal, for the court in *Burnett* said, "there can be no conviction under section 476a if the payee is informed by the maker at the time of delivery that there are insufficient funds to pay the check" (39 Cal.2d at p. 559), and it is uncontroverted that defendant disclosed to Mrs. Herberger [Dixon's bookkeeper] the present insufficiency of funds when he gave her the check.

[ ] [As suggested by the majority], however, *Burnett,* and, indeed, *In re Griffin,* 83 Cal.App. 779 [257 P. 458] and *People* v. *Wilkins,* 67 Cal.App. 758 [228 P. 367], relied on by *Burnett,* are not controlling. In none of these cases was there evidence of the defendant's intent to defraud notwithstanding his disclosure of the present insufficiency of funds. In *Burnett,* the court found that the insufficiency of funds was disclosed to the payee by issuance of a postdated check simultaneously with a currently dated check, both in payment of a pre-existing obligation. (39 Cal.2d at p. 560.) Assuming that the delivery of the postdated check implied a promise to deposit funds for its payment upon presentation under the circumstances there disclosed, there was no evidence whatever that the implied promise to deposit funds was made in bad faith and, hence, there was no evidence of an intent to defraud. Likewise, in *Griffin* it appears that the check was postdated and that the defendant informed the payee of the insufficiency of funds and requested her to hold it until such time as he advised her to present it for payment, as he was expecting to receive funds from his father. (83 Cal.App. at p. 781.) There was no evidence whatever of any bad faith on the part of the defendant and, hence, no evidence of an intent to defraud. Similarly, in *Wilkins,* the defendant stated to the payee that he did not have sufficient funds in the bank but would have on or about the first of September. (67 Cal.App. at p. 760.) Again, however, there was no evidence whatever of any bad faith on the part of the defendant and, hence, again, there was no evidence of intent to defraud.

---

[1]Brackets together, in this manner [ ], are used to indicate deletions from the opinion; brackets enclosing material are used to denote insertions or additions. See *Keizer* v. *Adams,* 2 Cal.3d 976, 978, footnote 1 [88 Cal.Rptr. 183, 471 P.2d 983].

Conversely, in the case at bench, notwithstanding defendant's postdating the check and informing Mrs. Herberger of the insufficiency of funds, the evidence is very persuasive that defendant had the intent to defraud at the time he delivered the check. [ ] Although reliance by the payee is required to support a conviction for theft by fraudulent pretenses, reliance by the payee is not an element of the crime proscribed by Penal Code section 476a. (*People* v. *Sherman,* 100 Cal.App. 587, 590 [280 P. 708]; *People* v. *Williams,* 69 Cal.App. 169, 172-173 [230 P. 667]; 1 Witkin, Cal. Crimes (1963) § 480, p. 441.)

It is true that a number of jurisdictions, perhaps the majority, preclude conviction under their "bad check" statutes when the check was postdated or the present insufficiency of funds was disclosed to the payee. (See Annot. at 29 A.L.R.2d 1181.) Some courts reach this result by holding that a post-dated check is not a "check" within the meaning of their statute. It is established in California, however, that a postdated check will support a prosecution under Penal Code section 476a. (*People* v. *Bercovitz,* 163 Cal. 636, 638 [126 P. 479].) Other courts reach this result on the theory that the disclosure of a present insufficiency of funds negates the intent to defraud. (E.g., *State* v. *Bruce,* 1 Utah 2d 136 [262 P.2d 960, 962].) It is manifest, however, that the disclosure of a *present* insufficiency of funds does not, in every case, negate the defendant's intent to defraud. The representation implied from the delivery of a check is not that there is *then* on deposit sufficient funds for the payment thereof but that the check will be paid in full upon presentation to the bank. (*People* v. *Rubin,* 223 Cal. App.2d 825, 834 [36 Cal.Rptr. 167, 9 A.L.R.3d 707]; *People* v. *Griffith,* 120 Cal.App.2d 873, 880 [262 P.2d 355]; Pen. Code, § 476a, *supra.*) The disclosure of a *present* insufficiency of funds, while it constitutes some evidence thereof, is not conclusive evidence of the defendant's knowledge or intention with respect to the payment of a postdated check upon its pre-sentation to the bank.

It is in recognition of the foregoing that the rule exists that " '[o]ne who negotiates a check with knowledge he has not sufficient funds in the bank to meet it—but who has good reason to believe, and honestly does believe, that it will be paid—cannot be said to have an intent to defraud the payee of the check.' " (*People* v. *Rubin, supra,* 223 Cal.App.2d at p. 834; *People* v. *Griffith, supra,* 120 Cal.App.2d at p. 880; see 1 Witkin, Cal. Crimes, *supra,* § 486, pp. 444-445.) The defendant's good-faith belief that the check will be paid upon presentation is material to prove his lack of intent to defraud. Similarly, evidence of his lack of a good-faith belief therein is material to prove his intent to defraud. Indeed, in Witkin, the rule is stated as follows: "If the defendant discloses his lack of funds to the payee, and promises *in good faith* to deposit them, and the payee consents to the ar-

rangement, there is no fraudulent intent; . . ." (1 Witkin, Cal. Crimes, *supra*, § 485, pp. 444, 445; italics added.)

I would hold, therefore, that the general proposition that "there can be no conviction under section 476a if the payee is informed by the maker at the time of delivery that there are insufficient funds to pay the check" (*People* v. *Burnett, supra*, 39 Cal.2d at p. 559), is overly broad and inapplicable to the case at bench in which, notwithstanding such disclosure, there was evidence that defendant could not have had a good-faith belief that the check would be paid by the bank upon presentation. The court, therefore, did not err in refusing to give the requested instruction.

The jury was fully instructed that defendant could not be convicted of a violation of Penal Code section 476a unless they found that he made or delivered the check in question with intent to defraud. (CALJIC (2d ed.) No. 425.) They were further instructed that "[a]n intent to defraud is an intent to deceive another person for the purpose of gaining some material advantage over him or to induce him to part with his property or to alter his position to his injury or risk, and to accomplish that purpose by some false statement, false representation of fact, wrongful concealment or suppression of truth, or by any other artifice or act fitted to deceive." (CALJIC (2d ed.) No. 426.) At trial, in respect to the bad check charge, defendant's attorney made to the jury the only argument he could, that defendant's postdating the check and disclosing to Mrs. Herberger the existing insufficiency of funds to pay the same evidenced his lack of intent to defraud. Obviously, the jury rejected this argument and accepted the rather compelling inference that defendant made and issued the check in bad faith, knowing that he had no reasonable expectation of arranging for payment upon presentation of the check to the bank. The implied determination by the jury that defendant made and issued the check with intent to defraud is amply supported by the evidence.

[ ]I would affirm the judgment of conviction.

McComb, J., concurred.